Isaías Pérez, demandante y apelada, *v.* Celestino Cruz Batista, demandado y apelante.

Núm. 10016.—*Sometido:* Febrero 8, 1950. *Resuelto:* Marzo 6, 1950.

934

*José E. Bosch Roqué* y *Luis A. Archilla Laugier,* abogados del apelante; *Manuel Torres Reyes* y *Sergio A. Silva,* abogados de la apelada.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Isaías Pérez inició ante la Corte de Distrito de Bayamón una demanda sobre división de comunidad de bienes contra Celestino Cruz Batista. Alega en ella sustancialmente que la demandante y el demandado desde el año 1936 hasta junio de 1947 vivieron en concubinato y establecieron una comunidad de bienes, trabajando ambos para economizar parte del dinero obtenido en sus respectivas actividades; que comenzaron a vivir juntos en Lajas en 1936 donde establecieron un negocio de quincalla ambulante; que luego se trasladaron a Guayama y después a Orocovis, dedicándose en ambos pueblos al negocio de referencia; que de Orocovis volvieron a Guayama y pasaron más tarde a Ponce donde establecieron una tienda de provisiones; que de Ponce pasaron a Santa Isabel donde continuaron este último negocio; que de Santa Isabel pasaron a los barrios Machuelo y Bayas, de Ponce, donde se dedicaron al negocio de lechería; que éste fracasó y se trasladaron nuevamente a Guayama donde una vez más establecieron el negocio de quincalla ambulante y que de allí salieron para la isla de Vieques, donde estuvieron como un año y cuatro meses, estableciendo allí un bazar y el negocio de mercadería ambulante; que luego de estar enfermo el demandado en Vieques y de economizarse la suma de $475 salieron para Bayamón, donde establecieron un taller para la

confección de ropa interior; que con el negocio establecido en Bayamón la demandante y el demandado adquirieron en el curso de los años varias propiedades que se describen, así como mercadería y *"goodwill"* valorados en $10,000, teniendo además depositada en los bancos la suma de $5,000; que sin motivo alguno el demandado lanzó a la demandante violentamente del hogar que tenían constituído, prohibiéndole la entrada a su casa y al negocio, cesando entonces las relaciones de concubinato y terminando la comunidad. Finaliza la demandante suplicando se condene al demandado que proceda a la división de la comunidad de bienes y que se le conceda a la demandante la parte que la corte estime que en ley le corresponde.

A la demanda así radicada, el demandado presentó una moción para desestimar por falta de hechos para constituir una causa de acción. Solicitó además varias especificaciones, que más tarde le fueron suministradas. Posteriormente radicó su contestación. En ella negó los hechos esenciales de la demanda y alegó como defensas especiales la falta de hechos para determinar una causa de acción, así como que la demandante y el demandado en los años de referencia mantuvieron tan sólo relaciones de concubinato, durante los cuales el demandado proveía a aquélla de alimentos, vestuario y otras necesidades y atendiendo ella únicamente a los quehaceres del hogar; que además el demandado desde 1936 tuvo a su cargo el sostenimiento de dos hijos de la demandante; que ella y él jamás concertaron acuerdo de clase alguna para compartir los bienes que acumularan y que la demandante nunca contribuyó con trabajo o capital alguno que le diera derecho a determinada participación en los bienes del demandado.

Trabada así la contienda fué el pleito a juicio y luego de oír extensa prueba testifical, la corte inferior dictó una llamada "Relación de Hechos, Opinión y Sentencia", declarando que el 50 por ciento de los bienes que especifica pertenecen a la demandante, incluyendo el 50 por ciento de la mercancía existente en el taller de confección de ropa situado en Baya-

món.   Condenó asimismo al demandado al pago de las costas y de $600 para honorarios de abogado.   No conforme con la sentencia así dictada, el demandado ha apelado y .en apoyo de su recurso imputa diez errores a la corte inferior.

■   El primero es al efecto de que ésta cometió error al declarar sin lugar la moción para desestimar basada en no aducir la demanda hechos determinantes de una causa de acción.   Al principio de esta opinión hemos expuesto las alegaciones esenciales de la demanda.   La hemos examinado y á nuestro juicio ella aduce una causa de acción, a tenor de lo resuelto por este Tribunal en *Torres* v. *Roldán,* 67 D.P.R. 367.

■   El segundo de los errores imputados por el demandado a la corte inferior es que ésta erró al ordenar en su sentencia la división de la comunidad de bienes.   Tampoco tiene en esto razón el apelante.   La corte meramente dijo en su Relación de Hechos, Opinión y Sentencia que los bienes que mencionaba a continuación pertenecían a la demandante y al demandado de por mitad y que los mismos debían ser liquidados entre ellos a base de un 50 por ciento para cada uno. También dijo que de la prueba aparece que el demandado después de separarse de la demandante comenzó a vender y a hacer pagarés al portador sobre algunas de sus propiedades y que como ella estimaba que esos bienes pertenecían a la demandante y al demandado, éste debía pagar a aquélla su parte correspondiente en los bienes así vendidos o hipotecados.   No expresó la corte en forma alguna, sin embargo, la manera en que debía hacerse la división.   En su consecuencia no pudo haberse cometido este error.

■■   Los errores tercero, cuarto, quinto, sexto, octavo y décimo se dirigen más bien a la apreciación de la prueba. Éstos son al efecto de que la corte inferior erró (3) al no declarar que los servicios prestados por la demandante al demandado fueron incidentales a la relación de concubinato entre ambos;   (4) al declarar probada la existencia de una comunidad de bienes sin demostrarse la concertación de un contrato de sociedad;   (5) al concluir que la demandante te-

nía derecho a una participación de un 50 por ciento en los bienes del demandado; (6) al no dar crédito a la declaración del demandado de que él había traído a la unión concubinaria con la demandante la suma de $6,000; (8) al resolver que los bienes que figuraban a nombre del demandado antes del 9 de junio de 1947 eran el resultado del trabajo, la economía y el esfuerzo de la demandante y el demandado y que a ambos pertenecían por partes iguales y (10) en la apreciación de la prueba.

Como hemos dicho antes la prueba fué voluminosa, ocupando el testimonio de la demandante las primeras ciento veinticinco páginas de la transcripción de evidencia. En su extensa declaración dice la demandante que allá para el año 1936 ella trabajaba como sirvienta en una fondita en el pueblo de Lajas; que un día se presentó allí el demandado con un pequeño bulto y que poco después él empezó a enamorarla y ella accedió a los requiebros de él; que el demandado tenía en dicho bulto telas y otros efectos de quincalla valorados en unos $60; que algunos días más tarde se fueron a vivir a Guayama, donde se dedicaron al negocio ambulante de quincalla; que meses después tuvieron noticias de que en Orocovis los negocios estaban buenos y allí se dirigieron, pero les fué mal. Sigue manifestando luego la demandante con lujo de detalles las vicisitudes que pasaron y los pequeños negocios a que se dedicaron posteriormente en Santa Isabel, Ponce, en varias ocasiones más en Guayama y más tarde en la isla de Vieques, donde el demandado sufrió una larga enfermedad y de donde salieron un día trayendo consigo la suma de $475 que habían economizado; que luego de desembarcar en Fajardo se dirigieron al pueblo de Bayamón, donde alquilaron una pequeña habitación y donde un señor conocido por Cheo Tejeras les enseñó a cortar ropa interior y donde trabajaron asiduamente desde 1940 hasta 1947, cuando el demandado la echó del hogar y se ha negado a darle su participación en los bienes adquiridos durante el tiempo que vivieron juntos. Declaró también la demandante que en todos esos pueblos ella

"trabajaba con él, unida a él durante todo ese tiempo, siempre con la idea de que tuviéramos algo, porque el señor (señalando al demandado) siempre me decía que yo trabajara, que lo que sacáramos eso era mío y de él también." (Tr. Ev. pág. 33.) También hay en autos prueba testifical tendiente a corroborar el testimonio de la demandante.

La prueba del demandado fué al efecto de que allá para el año 1936 vino de la República Dominicana a Puerto Rico, trayendo consigo en efectivo la suma de $6,000; que luego de visitar varios pueblos se dirigió a Lajas, donde conoció a la demandante; que empezaron a vivir en concubinato desde 1936 y continuaron así hasta junio de 1947; que la demandante sólo se dedicó durante todo ese tiempo a los quehaceres de su hogar y jamás atendió los negocios del demandado ni intervino en forma alguna en éstos; que cuando él conoció a la demandante ésta tenía dos hijos que él ha mantenido durante el tiempo en que ella y él vivieron juntos; que el capital que han levantado lo han hecho con el esfuerzo de él y que los $6,000 que trajo de la República Dominicana los tuvo en efectivo en su poder hasta el año 1943, cuando los depositó en un banco.(1)

La corte inferior halló que la prueba era contradictoria. Ella era, sin embargo, la llamada a dirimir en primera instancia ese conflicto y así lo hizo. El hecho de que la demandante y el demandado vivieran en concubinato durante los años en que se levantó el capital a que se hace mención por las partes, no es óbice para que aquélla tenga derecho a participar de él, si dicho capital es el resultado del esfuerzo, del trabajo y de la actividad tanto del demandado como de la demandante. Conforme dijimos en *Torres* v. *Roldán,* supra, a las páginas 368 y 369 ". . . el mero concubinato no crea

---

(1)La única prueba documental que figura en autos consiste en una demanda de daños y perjuicios instada por Rita Morales Delgado contra los aquí litigantes y contra el hijo de la demandante. Ese documento fué presentado por la parte demandante con el propósito de controvertir el testimonio de Rita Morales Delgado.

interés común en los bienes que adquieren los concubinos, . . .''
pero ''. . . aún en ausencia de un convenio expreso o implí-
cito, con miras a evitar un enriquecimiento injusto por parte
del demandado, el demandante tiene derecho a participar en
la proporción que sus fondos hayan contribuído a su adqui-
sición, en los bienes acumulados conjuntamente.'' Véase
también, Dr. Luis Muñoz Morales, Reseña Histórica y Ano-
taciones al Código Civil de Puerto Rico, Libro primero, págs.
316, 327 y siguientes.

■■ La corte inferior estimó, según hemos dicho, que la
demandante tenía derecho a una participación de un 50 por
ciento en los bienes reseñados. En casos de esta naturaleza
la participación de la mujer ha de fundarse siempre en el con-
trato celebrado, y de no existir éste en la labor y el esfuerzo
por ella realizados. En el presente caso la corte inferior re-
solvió que a la luz de los hechos que tenía ante sí la deman-
dante debía percibir el 50 por ciento del capital levantado.
Esta actuación encuentra apoyo en la prueba aducida y no
debemos modificarla.

■■ Tampoco creemos que fué un error de la corte a quo
no dar crédito a la declaración del demandado al efecto de
que éste trajo $6,000 en efectivo de la República Dominicana
y de que conservó dicha cantidad en su poder durante siete
años. Era duro en verdad creer semejantes aseveraciones.
Sea ello como fuere, era ésa cuestión para ser apreciada por
la corte a quo.

La aquilatación de la prueba cae enteramente dentro de la
sana discreción de la corte inferior y con tal discreción no
intervendremos a no ser que se nos convenza de que al así
hacerlo la corte cometió manifiesto error o actuó movida por
pasión, prejuicio o parcialidad. Nada de esto se nos ha de-
mostrado y en los autos hay suficiente prueba para sostener
las conclusiones a que llegó la corte inferior. *Varela* v.
*Fuentes,* ante, pág. 879 y casos allí citados.

■ El séptimo error señalado es que la corte inferior
erró al no admitir prueba sobre las deudas contraídas por el

demandado en el curso de sus negocios con antelación a la fecha de la separación de los concubinos. Leído aisladamente este señalamiento de error, la impresión que produce prima facie es que el mismo fué cometido, mas no hay tal cosa. Según aparece de los autos Luis Angelete fué llamado a declarar como testigo del demandado y luego de manifestar que trabaja con la casa Alonso Sobrino Hnos., Inc. y que conoce al demandado desde mediados de 1942 debido a que éste les visitaba para comprarles mercancía, se le preguntó si tenía conocimiento de las condiciones en que para el mes de junio de 1947 estaba la cuenta de Cruz Batista con la firma para la cual él trabajaba. Contestó el testigo que para aquel entonces "Cruz Batista le debía a la casa dos mil trescientos ochenta y seis dólares con ocho centavos." Se opuso el letrado de la parte demandante indicando que la mejor prueba eran los libros de la casa. La corte declaró con lugar la objeción y ordenó la eliminación de la pregunta y de la contestación, manifestando entonces el letrado del demandado que no tenía ninguna otra pregunta. La mejor prueba para demostrar la cantidad adeudada por el demandado a la casa Alonso Sobrino lo eran sin duda los libros de la corporación y no el testimonio oral de uno de sus empleados. *Acevedo* v. *Sucn. Dooley,* 52 D.P.R. 64, 69. En su consecuencia, la corte sentenciadora actuó acertadamente al declarar con lugar la objeción presentádale.

■ Sostiene también el demandado que la corte sentenciadora cometió error de derecho(²) al no dar cumplimiento a las disposiciones de la Regla 52(a) de las de Enjuiciamiento Civil.(³) Según dijimos en *Ramírez* v. *Corte,* 65 D.P.R. 351, 352, el fin primordial de ella "es poner a esta Corte Suprema en condiciones de poder determinar si las conclusiones de hecho y de derecho a que llegó la corte de distrito estuvieron

---

(²)Éste es el noveno señalamiento de error.

(³)La Regla 52(a) provee en lo pertinente: "En todos los casos la corte expondrá los hechos que estime probados y separadamente consignará sus conclusiones de derecho y ordenará que se anote la sentencia correspondiente; . . . ."

justificadas o no. . . ."  La Relación de Hechos, Opinión y Sentencia de la corte inferior cumple sustancialmente con los requisitos de la Regla 52(a).  En los párrafos tercero y cuarto la corte hace constar claramente los hechos que estimó probados, y en párrafos posteriores expone la ley que en su opinión debía aplicarse a tales hechos.  Hubo sin duda un cumplimiento sustancial con la aludida Regla.  Véase *Varela* v. *Fuentes,* supra.

*Debe confirmarse la sentencia apelada.*