EUSEBIA FERRER VDA. DE LUGO, demandante y apelada, *v.*
MARIANO VARELA, demandado y apelante.

Núm. 9955.—*Sometido:* Noviembre 17, 1949.   *Resuelto:* Marzo 24, 1950.

*Carlos D. Vázquez,* abogado del apelante; *Romany & Romany,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Eusebia Ferrer Vda. de Lugo solicitó en este caso la expedición de un auto de *injunction* mandatorio y permanente ordenando al demandado Mariano Varela que procediera a la demolición de una casa que se alega en la demanda ha construído el demandado, sin título ni derecho alguno,

en terrenos de la calle Palma de Miramar, en la cual tiene establecido un negocio para la venta de refrescos y otros artículos. Alegó la demandante que dicha construcción le impide, de una manera continua, el libre acceso a una faja de terreno de su propiedad que colinda por la parte Este con dicha calle Palma, impidiéndole además las vistas desde una casa enclavada en solar también de su propiedad, que colinda por el Norte con la otra faja de terreno. El demandado negó los hechos alegados en la demanda y como defensa especial alegó que la demandante ha incurrido en falta de diligencia (*laches*) ya que no se opuso ni realizó acción alguna tendente a impedir que se construyera la casa desde hace más de diez años.

Visto el caso y después de efectuarse una inspección ocular, la corte inferior declaró con lugar la demanda y en su sentencia concedió treinta días al demandado, después de ser firme la misma, para destruir la caseta a que se refiere la demanda y en la cual el demandado tiene establecido su negocio, excepto una vigésima parte de la caseta que está en terrenos de la demandante, por haber llegado a la conclusión de que dicha caseta, con excepción de dicha vigésima parte, está situada en terrenos de la calle Palma, hoy Guayama. Ordenó además al demandado abstenerse de construir casa o estructura alguna en la referida calle que le impida a la demandante tener libre acceso a las calles Guayama y Lindbergh o que impida las vistas a dichas calles desde la casa de la demandante, condenando además al demandado al pago de las costas y $250 de honorarios de abogado.

Aun cuando el demandado, al apelar de la sentencia, señala en su alegato seis errores, los tres primeros, en distinta forma, impugnan la apreciación que de la prueba hizo la corte inferior y las conclusiones de derecho a que llegó y por tanto, los resolveremos conjuntamente.

■ La corte sentenciadora, en la opinión que dictó en este caso, no consignó sus conclusiones de hecho y de dere-

cho, según lo exige la Regla 52(a) de las de Enjuiciamiento Civil, y aun cuando de su opinión puede determinarse cuáles fueron sus conclusiones, tanto de hecho como de derecho, las mismas están tan entremezcladas unas con otras a través de la opinión que no guardan el debido orden correlativo entre ellas. De nuevo llamamos la atención de las cortes inferiores a lo que dijimos en el caso de *Meléndez* v. *Metro Taxicabs*, 68 D.P.R. 766, 769, en cuanto a la conveniencia de que den cumplimiento a la Regla 52(a), sugestión ya repetida en *Varela* v. *Fuentes*, 70 D.P.R. 879 y *Pérez* v. *Cruz*, 70 D.P.R. 933.

█ █ La corte inferior consideró probado, por haberle merecido crédito la prueba presentada por la demandante y especialmente la declaración del testigo José Llompart Meléndez, que hace muchos años Rafael Fabián era dueño de una finca de más de 34,000 metros cuadrados en la barriada Miramar de Santurce, la cual procedió a urbanizar con el fin de vender solares; que el Sr. Llompart hizo el plano de urbanización en el cual se demarcó la calle conocida con el nombre de Palma; que las personas que compraron solares colindantes con dicha calle lo hicieron teniendo conocimiento de que dicha calle existía en el plano de urbanización y porque sabían que sus propiedades tendrían entrada y salida a dicha calle; que la demandante adquirió su propiedad por escritura pública otorgada el 15 de enero de 1942 ante el notario Harry M. Besosa por compra a José Matos Matos y en la misma se hizo constar que la colindancia Este es "con calle en proyecto paralela a la vía de la American Railroad Company"; que ella se quejó al Departamento de Sanidad cuando el anterior dueño de la caseta empezó a construirla pero que la misma siempre fué terminada clandestinamente; que el Gobierno de la Capital, debido al hecho de que existían varias calles con nombres repetidos, le cambió el nombre a la calle Palma al de calle Guayama; que dicha calle ha estado abierta al libre tránsito del público; que la caseta que ocupa el demandado está situada casi en

su totalidad en dicha calle y obstruye la entrada a la propiedad de la demandante y también las vistas desde la casa de la demandante hacia las calles Guayama y Lindbergh.

Sostiene el apelante que no habiéndose probado que el Sr. Fabián había hecho una donación al Municipio de San Juan de la faja de terreno que ocupa la calle y que el municipio había aceptado por escritura pública dicha donación o que, por título, se había establecido una servidumbre de paso sobre dicha faja de terreno, erró la corte al aplicar la doctrina del derecho común sobre dedicación pública la cual no debe aceptarse en Puerto Rico.

No tiene razón. Lo que hizo el Sr. Fabián al urbanizar sus terrenos y abrir la calle Palma como parte de la urbanización no fué una donación o constitución de una servidumbre que requiriera una aceptación escrita del municipio la primera, o un título la segunda. Como bien dice la apelada, la característica de una donación es la liberalidad al disponer una persona de sus bienes a favor de otra. Pero aquí el Sr. Fabián al urbanizar sus terrenos lo que hizo fué un negocio, ya que como parte de la causa al vender los solares de la urbanización trazó y abrió la calle Palma para que diera acceso a dichos solares. Y aceptando, sin resolverlo, a los fines de la argumentación, que dicha calle constituye una servidumbre establecida por el Sr. Fabián, cada vez que se vendió un solar en la urbanización haciendo constar que una de sus colindancias era dicha calle, existía como cuestión de hecho y de derecho el título necesario para dejarla establecida.

Pero es que la cuestión no es nueva en esta jurisdicción. En el caso de *Capella* v. *Carreras*, 48 D.P.R. 830, en el cual se trataba también de un intento de impedir el libre tránsito por la Avenida de la Palma,([1]) en Miramar, y des-

_____

([1]) No podemos determinar si la calle Palma hoy Guayama del presente caso es la misma Avenida de la Palma del caso de *Capella* v. *Carreras*, 48 D.P.R. 830, o su prolongación, o si por ser dos calles distintas con el mismo nombre por eso se cambió el nombre de la primera a Guayama.

pués de citar la jurisprudencia aplicable a casos de esta naturaleza, dijimos a las págs. 840-41:

"De la jurisprudencia citada se deduce, en primer lugar, que una vez trazado un plan de urbanización sobre un terreno dividido en manzanas, solares y calles, el dueño de los solares vendidos dentro del plan de urbanización está impedido de negar el uso de las calles trazadas a sus compradores, y, en segundo lugar, se deduce también que los dueños de solares adquieren el derecho de usar las calles trazadas en beneficio de sus solares, no sólo contra el dueño, sino también contra cualquier otra persona que limite y perturbe el uso y disfrute de la propiedad. Las personas que compran dentro del plan de urbanización adquieren derechos y contraen deberes de carácter recíproco, siendo uno de ellos el de tener acceso a las calles trazadas en el plano en beneficio de sus solares y de ser respetadas en el uso de las mismas. Pero aunque así no fuese, si la persona que tuvo el dominio del terreno trazado para calle no puede impedir al comprador el uso del mismo, con menos razón debe poder impedirlo ninguna otra persona carente de título sobre dichos terrenos, y especialmente ningún otro dueño de solar que haya adquirido dentro del plan de urbanización. . . .

". . . El plano de urbanización, según se deduce de la prueba, demuestra que las calles y avenidas fueron dedicadas al uso público y que se vendieron solares dentro del plan adoptado. En cuanto a la aceptación, puede ser expresa o tácita. No sabemos hasta qué punto pueda negarse que la urbanización de Miramar ha sido aceptada por la municipalidad. Los funcionarios del municipio, según se deduce de la prueba, actúan como si existiese la aceptación. Pero en cuanto al derecho de los demandantes, esta cuestión carece de importancia. Con aceptación o sin ella, los compradores de solares dentro de un plan de urbanización tienen derecho a utilizar las calles destinadas al uso público y a exigir que desaparezca cualquier estorbo o perturbación que constituya un menoscabo de ese derecho."

Ratificamos la doctrina expuesta en la segunda apelación en el mismo caso, *Capella* v. *Carreras*, 57 D.P.R. 258, y dijimos además a la pág. 264 que:

"Para que exista una calle con derecho a ser usada por los compradores de solares con arreglo a un plan de urbanización que la traza en el plano y la deja en la realidad sobre el terreno

a su libre uso y al del público, no es necesario que dicha calle esté afirmada o asfaltada o que tenga cunetas y aceras y sistema sanitario."

Véanse además los casos de *La Capital de Puerto Rico* v. *Robles*, 60 D.P.R. 702, en el cual ratificamos los de *Capella* v. *Carreras*, supra; y el de *Figueroa* v. *Guerra*, 69 D.P.R. 607, 612, en el que, al referirnos al primer caso de *Capella* v. *Carreras*, dijimos:

". . . El caso de *Capella* trataba de una situación especial. En él se adquirió un solar que formaba parte de una urbanización trazada de conformidad con un plano en solares, cuadras y calles. Obviamente, bajo tales circunstancias, un dueño de un solar no puede negarle a los dueños de los otros solares y al público en general, el derecho a usar las calles trazadas en el plano para beneficio de todos los solares. Todos los casos en que nos apoyamos en el caso de *Capella* envolvían planos similares. Cf. Anotación, 172 A.L.R. 167."

El propio caso de *Figueroa* v. *Guerra*, supra, ilustra la diferencia entre los casos de consagración de calles para fines públicos a virtud de un plano de urbanización y venta de solares con vista del mismo y aquéllos en que se pretende establecer un derecho de servidumbre de paso por determinado sitio sin título alguno.

Hubo prueba suficiente para demostrar que la caseta que ocupa el apelante está situada, casi en su totalidad, en la calle Palma hoy Guayama; que dicha calle es una abierta al tránsito público; que dicha caseta estorba la libre entrada y salida de la apelada a su propiedad; que el Inspector de Obras Públicas del Gobierno de la Capital, Néstor Gaztambide, le comunicó al apelante a través de un empleado que no podía tener dicha caseta allí; que el apelante adquirió la caseta de Ramón Burgos, que fué quien la construyó. El único testigo del demandado fué Burgos, quien declaró que él hizo la caseta en terrenos del Sr. Fabián pero no en la calle Palma porque ese callejón lo ha reparado él siempre para poder pasar unos camiones que se guardan en un garage de la Puerto Rican Express situado en esa misma calle; que

él no sabe si la caseta está en terrenos de la calle Palma porque él no sabe si es calle o no, ya que el municipio nunca la ha afirmado; que la caseta no interrumpe el tránsito por dicha calle. Admitió dicho testigo que el terreno donde él fabricó la caseta no era suyo y lo hizo sin permiso de la Sanidad.

Estamos satisfechos de que la corte inferior no cometió los errores sobre la apreciación de la prueba y que la del apelante no fué suficiente para controvertir el hecho primordial de la dedicación y consagración de la calle Palma hoy Guàyama para fines públicos.

Sostiene el apelante en su cuarto señalamiento que la corte erró al sostener que la apelada no incurrió en falta de diligencia (*laches*) y que dicha defensa no procedía en estas acciones para abatir un estorbo público en una calle. Tampoco existe este error. Como dijimos en el caso de *La Capital de Puerto Rico* v. *Robles*, supra, pág. 712: "En cuanto a la defensa de *laches* bastará decir que los hechos del caso y las circunstancias concurrentes tales como surgen de la prueba que dejamos expuesta, no la justifican, y en cuanto a la de transacción, que no se presentó prueba en el juicio."

Y véase *D'Ambrosia* v. *Acme Packing & Provision Co.*, 37 P.2d 887 (Wash., 1934).

Esa fué la única defensa que estableció el demandado en su contestación. Empero, en el juicio, y con la oposición de la demandante, presentó una escritura pública otorgada el 10 de enero de 1947, un mes y días antes de radicarse la demanda, a virtud de la cual aparecen el demandado y su esposa vendiéndole la caseta enclavada en terrenos ajenos a una hija suya por $1,100 que los vendedores confiesan haber recibido antes de otorgarse la escritura. Alega el apelante que no siendo él dueño de la caseta no procedía dictarse la orden de injunction en su contra. La corte inferior resolvió que, de acuerdo con la prueba, el demandado había hecho admisiones al testigo Llompart de que él era el dueño de la

caseta; que se probó además que, no obstante la escritura, el demandado continuó en posesión de la caseta en la misma forma que venía usándola anteriormente con su comercio establecido allí; que el traspaso a su hija por $1,100 no pagados en presencia del notario y todas las circunstancias concurrentes en la transacción, no explicadas por el demandado y su hija que a pesar de estar presentes no declararon en el juicio, no habiendo tampoco la hija solicitado intervenir en el caso, eran suficientes para resolver, como resolvió, que dicha escritura fué simulada y como tal, inexistente, preparada para entorpecer la presente acción y que el verdadero dueño de la caseta es el apelante.

No erró, a nuestro juicio, la corte inferior al llegar a la conclusión de que la escritura de compraventa era simulada y como tal, inexistente. *Rodríguez* v. *Pizá*, 60 D.P.R. 669; *Gómez & Vega* v. *Merced*, 37 D.P.R. 863; Cf. *Cortés* v. *Martínez*, 69 D.P.R. 761. Tampoco al condenar al demandado al pago de honorarios de abogado, pero no consideramos que deban imponérseles en apelación según solicita la apelada.

*Debe confirmarse la sentencia.*